UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:

CHINA VALVES TECHNOLOGY SECURITIES
LITIGATION

Master Docket
11 Civ. 0796 (LAK)

This document applies to:            All Actions
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

William Bernard Federman
FEDERMAN & SHERWOOD

Byron T. Ball
THE BALL LAW FIRM, LLP

*Attorneys for Lead Plaintiff Bristol
Investment Fund, Ltd.*

Alfred Robert Pietrzak
Joel M. Mitnick
Thomas Andrew Paskowitz
Daniel Allan McLaughlin
SIDLEY AUSTIN LLP

*Attorneys for Defendant China Valves
Technology, Inc. and Individual Defendants*

Lawrence Allen Steckman
John Sandercock
LESTER, SCHWAB, KATZ AND DWYER LLP

*Attorneys for Defendant Moore Stephens
Wurth Frazer and Torbet, LLP*

LEWIS A. KAPLAN, *District Judge.*

This putative class action concerns purchases of China Valves Technology, Inc.

("China Valves" or "the Company") stock between December 1, 2009 and January 13, 2011 (the

"Relevant Period").  Lead plaintiff Bristol Investment Fund, Ltd. ("Bristol" or "Plaintiff") alleges

that China Valves and its named officers and directors ("Individual Defendants") failed to disclose

material adverse facts about two of the Company's acquisitions – including their related party nature

– and materially overstated China Valves' financial results in the registration statement made

2

effective on December 14, 2009 (the "Registration Statement") and in the January 5, 2011 prospectus supplement (collectively, "Offering Documents")[1] in violation of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act").[2] Bristol asserts also claims under Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") based on the same alleged material misstatements and omissions.[3] Finally, Bristol alleges that defendant Moore Stephens Wurth Frazer and Torbet, LLP and its successor entity, Frazer Frost, LLP (collectively "Auditor Defendants"), China Valves' independent auditors during the Relevant Period, are liable under Section 11 of the Securities Act and Section 10(b) of the Exchange Act for material misstatements made in the audit reports that were incorporated in at least some of the Offering Documents.[4]

The matter is before the Court on motions to dismiss filed by China Valves, the Individual Defendants, and the Auditor Defendants.[5]

---

[1]     Consolidated Class Action Complaint ("CC") [DI 42], ¶¶ 1-2.

Although the CC alleges that material misstatements and omissions were incorporated into two other Prospectus Supplements, *id.* ¶¶ 133-34, 138-41, Bristol (the sole named plaintiff) alleges only that it purchased securities pursuant to the Registration Statement and the January 5, 2011 prospectus supplement. *Id.* ¶ 7. The Court therefore considers only whether the CC sufficiently alleges that these two offering documents included material misstatements and omissions. *See, e.g.*, *In re Lehman Bros. Secs. & ERISA Litig.*, 799 F. Supp. 2d 258, 273-74 (S.D.N.Y. 2011).

[2]     15 U.S.C. §§ 77k(a)(5), 77*l*(a)(2), 77o.

[3]     *Id.* §§ 78j(b), 78t(a).

[4]     *E.g.*, CC ¶ 241.

[5]     DI 58, DI 61, DI 64.

*Background*

I.      *The Parties*

  A.      *Lead Plaintiff*

    Bristol was designated lead plaintiff on June 29, 2011.[6]  It alleges that it purchased China Valves securities "at artificially inflated prices during the [Relevant] Period and pursuant and/or traceable to the Company's Registration Statement declared effective on December 14, 2009 and Prospectus Supplement filed with the SEC on January 5, 2011."[7]

  B.      *Defendants*

    China Valves is a Nevada corporation with its principal place of business in Kaifeng City, China.[8]  It purports to develop, manufacture, and sell metal pressure valves to customers in China.[9]  At all relevant times, its common stock has traded on NASDAQ under the symbol "CVVT."[10]

    The Individual Defendants are ten officers and directors of China Valves.[11] Defendant

---

[6]  DI 34.

[7]  CC ¶ 7.

[8]  *Id.* ¶ 8.

[9]  *Id.*

[10]  *Id.*

[11]  *Id.* ¶ 21.

Siping Fang is the Company's founder and chairman and, from the beginning of the Relevant Period through October 11, 2010, he served as the Company's chief executive officer.[12]  Defendant Jianbao Wang served as China Valves' chief executive officer from October 11, 2010 through the end of the Relevant Period.[13]  Defendants Gang Wei, Renrui Tang, and Ichi Shih served as the Company's chief financial officers at various times during the Relevant Period.[14]  Defendant Binjie Fang served as China Valves' chief operating officer from January 2008 through the end of the Relevant Period.[15]  Defendants Zengbiao Yu, Peter Li, and William Haus were directors and served as members of China Valves' audit committee.[16]  Defendant Bin Li is a 34 percent shareholder of China Valves.[17]

The Auditor Defendants issued an audit report dated March 15, 2009 relating to the Company's financial statements for 2007 and 2008 and consented to the incorporation of that report into the Offering Documents.[18]  They issued another in the Company's Form 10-K for the year

---

[12]   *Id.* ¶ 9.

[13]   *Id.* ¶ 10.

[14]   *Id.* ¶¶ 11-13.

[15]   *Id.* ¶ 14.

[16]   *Id.* ¶¶ 15-17.

[17]   *Id.* ¶ 20.

Some, but not all, of these Individual Defendants signed various SEC filings issued by China Valves.  Siping and Binjie Fang, Ichi Shih, and the three members of the Audit Committee (Yu, Li, and Haus) signed the 2009 Form 10-K and the Registration Statement. *Id.* ¶¶ 9, 13-17.

[18]   *Id.* ¶ 22.

ending 2009.[19]

II.      *Substantive Allegations*

Bristol alleges that China Valves made material misstatements and omissions in various filings with the Securities and Exchange Commission (the "SEC") that were incorporated in the Offering Documents.  It bases many of these allegations on discrepancies between China Valves' SEC filings and filings the Company made with the Chinese State Administration for Industry and Commerce ("AIC").  These discrepancies relate to: (1) China Valves' acquisition of Able Delight (Changsha) Valve Co., Ltd. ("Changsha Valve"), (2) China Valves' acquisition of Shanghai Pudong Hanwei Valve Co., Ltd. ("Hanwei Valve"), (3) the allegedly undisclosed short-term loan to Binjie Fang, and (4) the allegedly inflated revenue and gross profit figures the Company provided in its Form 10-K/As filed for the years ending December 31, 2008 and December 31, 2009.  These discrepancies, moreover, form the basis of Bristol's allegations against the Auditor Defendants because they allegedly were reckless in certifying China Valves' financial statements for the years 2007 through 2009.[20]

The CC alleges that these discrepancies became public on January 13, 2011 when the Citron Report, an online report[21] published by Citron Research, allegedly revealed the differences

---

[19]        *Id.*

[20]        *Id.* ¶ 233.

[21]        Defendants refer to the Citron Report as a "blog post."  DI 62, at 20.

between the SEC and AIC filings and the alleged related party nature of the two acquisitions.[22]

       A.     *Changsha Valve Acquisition*

On January 12, 2010, China Valves announced that it had signed a letter of intent to acquire Changsha Valve for $15 million.[23]  The asset purchase agreement attached to the Form 8-K China Valves filed with the SEC on February 8, 2010 stated that the acquisition was completed on February 3, 2010 when China Fluid Equipment Holdings Limited ("China Fluid") – a wholly-owned subsidiary of China Valves – acquired the assets of Changsha Valve from Able Delight Investment Limited ("Able Investment").[24]  The asset purchase agreement specified that the price of this acquisition was $15 million.[25]  In a related press release, China Valves stated that it "expect[ed]" Changsha Valve to contribute approximately $20.5 million in revenue and $5.0 million in net income.[26]

On November 18, 2010, the Company filed a Form 8-K/A with the SEC that detailed the Changsha Valve acquisition.  It disclosed that on November 20, 2009, China Valves had caused Qing Lu to form Able Investment for the purpose of acquiring Changsha Valve.[27] Qing Lu allegedly

---

[22]

     Mitnick Decl. [DI 63], Ex. M.

[23]

     CC ¶ 67.

[24]

     *Id.* ¶¶ 68-69.

[25]

     *Id.* ¶ 69.

[26]

     *Id.* ¶ 70.

[27]

     *Id.* ¶ 108.

is the first cousin of Siping Fang and the wife of Bin Li, who owns 34 percent of China Valves'
stock.[28]  Qing Lu's relationship to Siping Fang and Bin Li was not disclosed in the Form 8-K/A.

The Form 8-K/A stated that Able Investment was created to purchase Changsha
Valve because  Changsha Valve's prior owner, Watts Regulator, Inc. ("Watts Regulator"),[29] would
not sell it unless the purchasing party was a company "whose registered owner was not [China
Valves] or any of its affiliates."[30]  It further disclosed that on December 20, 2009, China Valves,
through a wholly-owned subsidiary, loaned $6.12 million to Able Investment to acquire Changsha
Valve.[31] Able Investment ultimately acquired Changsha Valve from Watts Regulator for $6.07
million.[32]  The Form 8-K/A accounts also for the difference between the $6.07 million paid by Able
Investment to acquire Changsha Valve from Watts Regulator and the $15 million paid by China
Fluid to acquire Changsha Valve from Able Investment.  In short, the SEC filing discloses additional
payments of $8.93 million were made for: (1) accounts payable of Watts' subsidiaries, (2) unpaid
sales commissions, salaries, severance payments, and bonuses of Changsha Valve employees, (3)
legal and due diligence fees, and (4) $50,000 in compensation to Qing Lu.[33]

---

[28]

     *Id.* ¶¶ 48, 108.

[29]

     Watts Regulator is a wholly-owned subsidiary of Watts Water Technologies, Inc. ("Watts Water"), a company listed on the NYSE.  *See id.* ¶ 108.

[30]

     *Id.*

[31]

     *Id.* ¶¶ 108-09.

[32]

     *Id.* ¶ 108.

[33]

     *Id.*  The $50,000 payment to Qing Lu accounts for the difference between the $6.12 million loan to Able Investment and the $6.07 million paid to Watts Regulator as well.

Although plaintiff admits that the November 18, 2010 Form 8/K-A was a partial corrective disclosure,[34] it alleges that the Company nevertheless failed to disclose certain material information, including (1) the allegedly related party nature of this acquisition because Qing Lu was paid $50,000, and (2) the fact that Changsha Valve was under investigation for violations of the Foreign Corrupt Practices Act ("FCPA") when Watts Regulator sold it to Able Investment.[35]

      B.     *Hanwei Valve Acquisition*

On February 11, 2010, the CC alleges that China Valves announced that it had "signed a letter of intent to purchase 100 % equity ownership" of Hanwei Valve for approximately $20 million.[36]  At that time, Hanwei Valve was owned by Shanghai Hanhuang Valve and Hong Kong Hanxi Investment Co.  Subsequently, a wholly-owned subsidiary of China Valves – Henan Tonghai Fluid – acquired one of the two owners of Hanwei Valve – Shanghai Hanhuang Valve. Finally, on April 8, 2010, Henan Tonghai Fluid entered into an asset transfer agreement pursuant to which it acquired the equity interests of Shanghai Hanhuang Valve and Hong Kong Hanxi Investment Co.[37]  The press release about the agreement stated that China Valves "expects Hanwei

---

[34]

        *Id.*; *see also* DI 69, at 21.  As Plaintiff did not purchase any of China Valves' stock until after the November 18, 2010 Form 8/K-A was filed, the alleged material misstatements and omissions from prior SEC filings that were disclosed and corrected in the subsequent filings, including the November 18, 2010 Form 8/K-A, are not actionable by plaintiff.

[35]

        CC ¶¶ 50, 117; *see also* DI 69, at 21-25.

[36]

        CC ¶ 72.  Although the CC cites a press release which refers to the transaction as a purchase of 100 % equity ownership, it is clear that the transaction was in fact an asset transfer.  *See* CC ¶ 87.

[37]

        *Id.* ¶¶ 86-87.

Valve to contribute $20 million in revenue and $5 million in net income" for the 2010 fiscal year.[38]

Plaintiff alleges that several material misstatements were made regarding the Hanwei Valve acquisition.  First, it asserts that the acquisition of Hanwei Valve was not completed until October 30, 2010 because the equity owners of Hanwei Valve did not transfer their interests until then.[39]  Second, it disputes the reported purchase price, as AIC filings allegedly show that Hanwei Valve was acquired for only $7.47 million.[40]  Finally, plaintiff complains that China Valves failed to disclose that the Hanwei Valve acquisition was a related party transaction because its wholly-owned subsidiary – Henan Tonghai Fluid – had acquired Shanghai Hanhuang Valve before the asset purchase agreement was signed.[41]

C.      *Alleged Binjie Fang Receivable*

Bristol alleges also that China Valves failed to disclose in the Offering Documents a $322,725 receivable from Binjie Fang.[42]  According to AIC records, Zhenghou City ZD Valve Co. Ltd. ("ZD Valve"), a wholly-owned subsidiary of China Valves, recorded at the end of 2009 "a receivable . . . from Binjie Fang, who was a director and COO of China Valves and the son of

---

[38]      *Id.* ¶ 86.

[39]      *Id.* ¶ 88.

[40]      *Id.*

[41]      *Id.*

[42]      *Id.* ¶ 59.

Defendant Siping Fang."[43]  Plaintiff alleges, on information and belief, that this $322,725 receivable was a short-term loan to Binjie Fang that was not disclosed properly.[44]

### D.    Other Alleged Material Misstatements

Finally, Bristol alleges that China Valves materially overstated its revenue and gross profit figures in its 2008 Form 10-K/A, which was incorporated into the Registration Statement, and in its Form 10-K for the year ending December 31, 2009, which was incorporated into the January 5, 2011 Prospectus Supplement.[45]

### III.    The Consolidated Complaint

Based on these substantive allegations, plaintiff asserts five causes of action against the three groups of defendants.

Under the Exchange Act, it alleges a Section 10(b) and Rule 10b-5 claim against all defendants (except 34 percent shareholder Bin Li) and a Section 20(a) claim against the Individual Defendants as controlling persons of China Valves.

Under the Securities Act, it alleges a Section 11 claim against China Valves, the Auditor Defendants, and the Individuals Defendants who signed the Registration Statement (Siping Fang, Shih, Yu, Peter Li, Haus, and Benjie Fang).  It alleges also a Section 12(a)(2) claim against China Valves and a Section 15 claim against the Individual Defendants as control persons of China

---

[43]    *Id.*

[44]    *Id.* ¶ 60.

[45]    *Id.* ¶¶ 63, 118.

Valves.

*Discussion*

I.    *Legal Standard*

To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face."[46] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[47]  The Court accepts as true all well-pleaded factual allegations and "draws all inferences in the plaintiff's favor."[48]

In deciding a motion to dismiss, a court considers the complaint and "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."[49]

II.   *Exchange Act Claims*

A.    *Elements*

---

[46]

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[47]

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556).

[48]

*Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotation marks and citation omitted).

[49]

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

To state a claim under Section 10(b) of the Exchange Act and Rule 10b-5, a plaintiff must allege that "the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff."[50] Section 20(a) imposes liability on control persons for underlying Exchange Act violations.[51]

A Section 10(b) claim must satisfy also the pleading standard under Rule 9(b) and the Private Litigation Securities Reform Act of 1995 ("PSLRA").[52] Accordingly, it must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.[53]  In pleading *scienter*, the PSLRA requires that the complaint "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[54]  This requirement may be satisfied by "alleging

---

[50]

*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) (quoting *Lawrence v. Cohn*, 325 F.3d 141, 147 (2d Cir. 2003) in turn quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000)).

[51]

15 U.S.C. § 78t.

[52]

FED. R. CIV. P. 9(b); *ATSI Commc'ns Inc.*, 493 F.3d at 99 ("[P]rivate securities fraud actions must also meet the PSLRA's pleading requirements or face dismissal.").

[53]

*See, e.g.*, *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000); *see also* 15 U.S.C. § 78u-4(b)(1) (complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed").

[54]

15 U.S.C. § 78u-4(b)(2).

facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness."[55]  "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences."[56]  For an inference to be sufficiently strong, "a reasonable person [must] deem [it] cogent and at least as compelling as any opposing inference one could draw from the facts alleged."[57]

### B.    Section 10(b) Claims

#### 1.    Alleged Material Misstatements and Omissions

Bristol alleges material misstatements based on discrepancies between SEC and AIC filings regarding the cost of the Hanwei Valve acquisition and the Company's revenue and gross profit figures for 2008-09.  Moreover, it alleges material omissions about the related party nature of the acquisitions, the related party nature of the Binjie Fang receivable, and the fact that Changsha Valve was under investigation for alleged FCPA violations when China Valves purchased it.[58]

##### a.    Alleged Material Misstatements Regarding Discrepancies Between

---

[55]

ATSI Commc'ns Inc., 493 F.3d at 99 (citing Ganino, 228 F.3d at 168-69).

[56]

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323 (2007).

[57]

Id.

[58]

This summary of the alleged material misstatements and omissions takes into account China Valves' argument that at least some of the alleged material misstatements and omissions were disclosed prior to Bristol's January 5, 2011 purchase.  See DI 62, at 22-23; see also supra note 35.

*SEC and AIC Filings*

Bristol alleges that China Valves falsely reported the cost of the Hanwei Valve acquisitions as well as its revenue and gross profit amounts for the years 2008 and 2009 in its January 5, 2011 Prospectus Supplement.[59]  For example, Bristol notes that in 2008, China Valves reported $65.9 million in revenue and $25.9 million in gross profit in SEC filings while its AIC financial reports stated lower revenues of $55.6 million and gross profits of $15.6 million.[60]

Defendants argue that these assertions alone are insufficient to allege that the SEC filings were false.[61]  Simply stated, they argue that nothing "is offered to give the Court a basis to conclude that the rules and practices of the local AIC offices required any of these transactions of financial reports to be reported under the same standards as U.S. GAAP [Generally Accepted Accounting Principles]."[62]  They cite *Afra v. Mecox Lane Ltd.*[63] and *In re A-Power Energy*

---

[59]

E.g., CC ¶¶ 47, 51-52, 63, 66, 71, 99, 105, 118.  Each of these allegations is based on the fact that the Company allegedly disclosed different figures to the AIC. *E.g.*, *id.* ¶¶ 57, 80, 88, 148, 150-54.

[60]

*Id.* ¶ 63.  The discrepancies between the SEC and AIC financial figures are significantly smaller than those in factually similar cases in which federal securities claims survived motions to dismiss.  *See Ho v. Duoyuan Global Water, Inc.*, No. 10 Civ. 7233 (GBD), __ F. Supp. 2d __, 2012 WL 3647043, at *12-13 (S.D.N.Y., Aug. 24, 2012) (stating that § 11 claims survived motions to dismiss based on discrepancies between SEC and AIC financial figures where some of the "SEC filings reported revenue and net income [figures that were] one-hundred times greater than what was reported in the SAIC filings").

[61]

DI 62, at 20-21.

[62]

*Id.* at 20.

[63]

No. 10 Civ. 9053, 2012 WL 697155 (S.D.N.Y. Mar. 5, 2012).

*Generation Systems Ltd. Securities Litigation.*[64]  Bristol responds by citing cases from the Central District of California that have sustained similar claims based on differences between SEC and AIC filings.[65]

Bristol's allegations are insufficient in their current form to satisfy the heightened pleading standards of Rule 9(b) and the PSLRA.  The factually similar cases cited by the parties demonstrate that when a securities fraud claim is based on discrepancies between AIC and SEC filings, the plaintiff must allege at least some facts to support that (1) the SEC figures, and not the AIC filings, are false, and (2) any variation is not attributable to variations in reporting rules or accounting standards.[66]  Bristol makes no such allegation in the CC.  Indeed, it does not allege what

---

[64]

No. MDL 11-2302, 2012 WL 1983341 (C.D. Cal May 31, 2012).

[65]

DI 69, at 30-31 (citing *Henning v. Orient Paper, Inc.*, No. 10 Civ. 5887, 2011 WL 2909322, at *4 (C.D. Cal. July 20, 2011), *China Educ. Alliance*, No. 10 Civ. 9239, 2011 WL 4978483, at *2, *5 (C.D. Cal. Oct. 11, 2011), and *Dean v. China Agritech, Inc.*, 11 Civ. 1331, 2011 WL 5148598, at *4-5 (C.D. Cal. Oct. 27, 2011)); *see also* DI 78, at 1 (citing *Snellink v. Gulf Resources, Inc.*, __ F. Supp. 2d __, 2012 WL 1693979 (C.D. Cal. May 15, 2012), *In re China Med. Sec. Litig.*, No. SA CV11-1061, 2012 U.S. Dist. LEXIS 65807 (C.D. Cal. May 10, 2012), and *Katz v. China Century Dragon Media, Inc.*, No. LA CV11-02769, 2012 U.S. Dist. LEXIS 65807 (C.D. Cal. May 7, 2012)).

[66]

*See, e.g.*, *In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*, 2012 WL 1983341, at *8 ("Plaintiff does not appear to have alleged that compliance with PRC's GAAP is even required when filing with the SAIC or that A-Power's subsidiaries prepared their filings in compliance with GAAP. . . . Absent at least that allegation, it is not clear to the Court that Plaintiff has adequately pled falsity with respect to the SEC/SAIC filings because the Court would have no way of knowing whether it was comparing apples-to-apples or instead apples-to-oranges. Moreover, until at least that allegation, Plaintiff would not have satisfactorily alleged why the SEC filings were false as opposed to the SAIC filings."); *Snellink*, 2012 WL 1693979, at *14 ("This case closely resembles other Chinese securities cases in which courts have found falsity, where . . . (3) plaintiffs relied on the comparison of defendant's SEC, SAIC, and SAT filings to show falsity . . . and (4) plaintiffs claimed the Chinese and U.S. accounting standards were sufficiently similar such that the figures should have been substantially the same."); *In re China Med. Sec. Litig.*, 2012 U.S. Dist. LEXIS 65807, at *7-8 (finding adequate allegations of falsity where plaintiff had alleged that variation between SEC and AIC filings were not attributable to "different reporting

accounting standards, if any, are required for AIC filings, the similarities or differences between those standards and U.S. GAAP, and any basis for concluding that the SEC filings – and not the AIC filings – are inaccurate.[67]  It alleges only that differences exist in the SEC and AIC filings and assumes or concludes the SEC filings must be false.[68]  Furthermore, the discrepancies between the AIC and SEC filings here were not nearly as large as those in some cases where factually similar claims survived motions to dismiss.[69]  The allegations in the CC, in their current form, are insufficient to allege falsity adequately under Rule 9(b) and the PSLRA.

Bristol seemingly recognizes the CC falls short in this regard because it argues that "[n]o differences between the requirements for AIC filings and SEC filings can explain the differences between the reported revenues and acquisition purchase prices in China Valves' SEC filings and its AIC filings" and that "there is sufficient reason to believe that the AIC filings are accurate" because of harsher penalties in China.[70]  No such allegations, however, are made in the CC.

---

rules or accounting methods" and where defendant had admitted that the SEC figures were not reliable); *Arfa*, 2012 WL 697155, at *12 ("With respect to the Amended Complaint's alleged discrepancy in Mecox' 2008 reported financial results, the Amended Complaint does not allege the registration statement's 2008 figures to be false, only that a different figure was filed with the Chinese government.").

[67]

Plaintiff seems to assume that the SEC filings are incorrect because the financial figures reported to the SEC are more favorable to China Valves than those reported to the AIC.  But the CC nowhere makes this allegation or provides factual support for this inference.

[68]

*E.g.*, CC ¶¶ 63, 71, 88, 121, 169, 200 ("China Valves' financial results as reported in the financial statements included or incorporated in the Company's SEC filings and disseminated to the United States public were substantially higher than the financial results reported to Chinese regulators and therefore materially overstated.").

[69]

*See Duoyuan Global Water, Inc.*, 2012 WL 3647043, at *12-13.

[70]

DI 69, at 30-31.

Accordingly, these alleged material misstatements fail to state a claim.

                    b.      *Alleged Material Omissions Regarding Alleged Related Party Transactions and Changsha Valve's Potential FCPA Violations*

The four alleged material omissions relate to the alleged related party nature of the acquisitions, the receivable to Binjie Fang, and the fact that China Valves did not disclose that Watts Water had identified possible FCPA violations involving Changsha Valve before China Valves acquired it.

                    i.      *Alleged Related Party Nature of Various Transactions*

Item 404 of Regulation S-K provides that a registrant must "[d]escribe any transaction, since the beginning of the registrant's last fiscal year, or any currently proposed transaction, in which the registrant was or is to be a participant and the amount involved exceeds $120,000, and in which any related person had or will have a direct or indirect material interest."[71]

Bristol alleges that China Valves failed to disclose the related party nature of (1) the Changsha Valve acquisition because of the involvement of Bin Li's wife, Qing Lu, (2) the Hanwei Valve acquisition because China Valves' wholly-owned subsidiary had acquired one of the two owners of Hanwei Valve – Shanghai Hanhuang Valve – before the asset purchase agreement was signed, and (3) the alleged loan to Binjie Fang. However, even assuming that the transactions were related party transactions,[72] Bristol fails to allege that they were material or, in some cases, that their

---

[71]      17 C.F.R. § 229.404(a).

[72]      The Court makes no such finding.

18

disclosure was required under Item 404.

In this Circuit, an "omission is material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."[73]  Both quantitative and qualitative factors must be considered.[74]  As materiality is a mixed question of law and fact, a complaint may be dismissed on materiality grounds only if the alleged misstatements and omissions "are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."[75]

First, in the Changsha Valve acquisition, China Valves disclosed the structure of the transaction and the fact that Qing Lu received $50,000 before Bristol purchased any securities.[76] While Bristol argues that Qing Lu had an interest in the entire value of the loan given to Able Investment to purchase Changsha Valve, it is unclear how she had a direct or indirect interest in the loan because it was used to purchase Changsha Valve on China Valves' behalf.  While it is clear that she had a direct interest in the $50,000 payment she received, this amount falls below the $120,000 threshold in Item 404, and China Valves disclosed the amount of the payment.  Bristol therefore has failed to allege that China Valves' omission regarding Qing Lu's relationship to Bin Li and Siping Fang was material or even required by Item 404 in the first instance.

---

[73]
        *ECA*, 553 F.3d at 197; *see also Ganino*, 228 F.3d at 162.

[74]
        *ECA*, 553 F.3d at 204.

[75]
        *Id.* at 197.

[76]
        *E.g.*, CC ¶ 48.

Second, Bristol's argument about the related party nature of the Hanwei Valve acquisition boils down to an issue of timing.  On February 11, 2010, China Valves announced that it had signed a letter of intent to purchase 100 percent equity ownership of Hanwei Valve.[77]  At that time, Hanwei Valve was owned by Shanghai Hanhuang Valve and Hong Kong Hanxi Investment Co.  Shortly thereafter, China Valves – through Henan Tonghai Fluid, a wholly-owned subsidiary – acquired Shanghai Hanhuang Valve.  Then, on April 8, 2010, Henan Tonghai Fluid purchased Hanwei Valve's assets pursuant to an asset transfer agreement to which Shanghai Hanhuang Valve and Hong Kong Hanxi Investment also were parties.  In view of China Valves' early 2010 acquisition of Shanghai Hanhuang Valve, the asset purchase thus was a related party transaction.  Nevertheless, China Valves' Form 8-K did not so characterize it, as China Valves at least arguably should have done.  That said, however, Bristol has not alleged facts that, if credited, would permit a reasonable trier of fact to conclude that China Valves' omission was material.

Third, Bristol alleges that China Valves omitted in SEC filings that it had made a $322,725 loan to Binjie Fang.[78]  This allegation is made on the basis of AIC filings and on information and belief.[79]  While this amount exceeds the $120,000 threshold in Item 404, no allegations are made about whether or when this receivable was collected or that it existed at the time that Bristol purchased stock.  Moreover, the amount of this loan is quantitatively small relative

---

[77]      *Id.* ¶ 72.  As previously noted, although the press release refers to the transaction as a purchase of 100% equity interest, it instead appears to have been an asset transfer.  *See supra* note 36.

[78]      *Id.* ¶ 59.

[79]      *Id.* ¶¶ 59-60.

to the size of China Valves' operations.[80]  Thus, Bristol fails to allege with particularity that this receivable would have altered the total mix of information when Bristol purchased China Valves' shares.[81]

### ii.    Undisclosed FCPA Investigation into Changsha Valve

The final alleged material omission alleged in the CC is that China Valves failed to disclose that Changsha Valve was under investigation for possible FCPA violations when the Company acquired it in 2010.  The basis for this allegation is that Watts Water – the owner of Watts Regulator that, in turn, owned Changsha Valve – disclosed in its November 4, 2009 Form 10-Q that "we have received information that employees of [Changsha Valve] made payments to employees of state-owned agencies.  Such payments may violate the Foreign Corrupt Practices Act, or FCPA. We are conducting an investigation utilizing outside counsel and voluntarily disclosed this matter to the United States Department of Justice and the Securities and Exchange Commission."[82]

The CC, however, fails to make any particularized allegation that this purported

---

[80]

See, e.g., Mitnick Decl. [DI 63], Ex. B (China Valves' September 2009 Form 10-Q showing more than $134 million in assets and almost $29 million in current liabilities).

[81]

In any event, Bristol's allegation regarding the loan to Binjie Fang fails to allege loss causation because it does not allege that the existence of this short-term loan became public during the period within which it held China Valves's stock.  While Bristol argues that because the Citron Report "revealed multiple instances in which the Company failed to disclose related party transactions . . . it is likely that reasonable investors not only reacted to the knowledge of these undisclosed related party transactions but also became concerned that the Company may have engaged (or would engage) in additional undisclosed related party transactions," that argument is insufficient to allege loss causation.  DI 69, at 60.

[82]

CC ¶ 50.

omission was material when Bristol purchased shares in January 2011.[83]  Indeed, in a subsequent

response to the SEC, China Valves noted that "we investigated Changsha Valve and found no

evidence that any employee made improper payments to foreign government officials.  We have

hired Pillsbury Winthrop Shaw Pittman LLP . . . to ensure compliance with the FCPA."[84]  Without

more, the alleged omission about potential FCPA liability is insufficient in its present form.[85]


C.      *Section 20(a) Claim*

As the CC fails to plead an underlying violation of the Exchange Act, its allegations

of control person liability under Section 20(a) fail also.[86]


III.    *Securities Act Claims*

A.      *Elements*

To state a claim under Section 11 of the Securities Act, a plaintiff must allege that:

---

[83]

In fact, exactly the opposite appears to be true.  The potential FCPA violations were not material for China Valves, as the SEC ultimately imposed civil penalties against Watts Water – not China Valves – because the violations occurred when Changsha Valve was a subsidiary of Watts Water. Federman Decl. [DI 70], Ex. A.

[84]

Mitnick Decl. [DI 63], Ex. H, at 13.

Nor is there a particularized allegation of *scienter* regarding this alleged omission because it is unclear from the CC that China Valves (and the Individual Defendants) thought that these prior FCPA violations would result in harm to the Company.

[85]

As the CC fails to allege any material misstatement or omission in the relevant SEC filings, it fails to allege fraud on the part of China Valves, the Individual Defendants and the Auditor Defendants.

[86]

*See, e.g.*, *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996).

"(1) she purchased a registered security . . . ; (2) the defendant participated in the offering in a manner sufficient to give rise to liability under section 11; and (3) the registration statement 'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'"[87]  Section 12(a)(2) imposes liability under similar circumstances when a person who offers or sells a security "by means of a prospectus or oral communication" makes "an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading."[88]  And Section 15 imposes liability on persons that "control[] any person liable" under Sections 11 or 12 of the Securities Act.[89]

*Scienter*, reliance, and loss causation are not elements of claims under Sections 11 or 12.[90]  Section 11 and 12 claims that are based on averments of fraud, however, must be pled with particularity under Federal Rule of Civil Procedure 9(b).[91]  If Securities Act claims are based on fraud, Rule 9(b) requires that they "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4)

---

[87]

       *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010) (quoting 15 U.S.C. § 77k(a)).

[88]

       15 U.S.C. § 77*l*(a)(2).

[89]

       *Id.* § 77o.

[90]

       *Rombach*, 355 F.3d at 169 n.4.

[91]

       *Id.* at 171 ("We hold that the heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud.").

explain why the statements were fraudulent."[92]


     B.     *The Securities Act Claims Sound in Fraud*

        An initial issue to decide is under which standard, Rule 8 or Rule 9(b), plaintiff's Securities Act claims must be pleaded. China Valves argues that the heightened Rule 9(b) is required in these circumstances because plaintiff's Section 11 and 12(a)(2) claims – like its Section 10(b) claim – sound in fraud.[93] Bristol responds that it separates its Securities Act and Exchange Act claims in the CC and that it uses only the statutory language "material false and misleading" to describe the alleged Securities Act violations.[94] Bristol's argument is unavailing.

        Even though Bristol alleges that its Securities Act claims are "not based on and do[] not sound in fraud,"[95] it fails to identify any factual basis upon which it pleads negligent or innocent conduct on the part of China Valves. All of the factual underpinnings in the CC allege how the Company's actions were "intentional[]"[96] and deliberate[]"[97] and done, at least in part, to "enrich

---

[92]

     *E.g.*, *Mills*, 12 F.3d at 1175.

[93]

     DI 62, at 16-19.

[94]

     DI 69, at 33-34; *see also* CC ¶¶ 122-49.

[95]

     *E.g.*, CC ¶¶ 240, 251.

[96]

     *Id.* ¶ 113 ("There is a strong inference that these material misrepresentations were intentionally disseminated so as to artificially bolster confidence in the Company's stock in preparation of the Company's take down of the shelf offering in January 2011.").

[97]

     *Id.* ¶ 111 ("Defendants were clearly aware of all these material facts and circumstances concerning the Able Delight (Changsha) acquisition, but deliberately chose not to disclose them thereby continuing to mislead investors.").

[Defendants] and/or their immediate family members at the expense of shareholders."[98]  Bristol alleges also that "the inconsistencies in the Company's disclosures [regarding one of the acquisitions] indicate that the Company may have committed a concerted fraud on investors."[99]

Having reviewed the allegations on which plaintiff's Securities Act claims rely, the Court can find none that suggests that the Company, Auditor Defendants, or Individual Defendants acted negligently rather than fraudulently.  Thus, plaintiff's assertion that its Securities Act claims "do[] not sound in fraud" is contradicted by the factual allegations of the CC and insufficient to avoid Rule 9(b)'s particularity requirement.[100]

C.    *Section 11 and 12(a)(2) Claims*[101]

---

[98]

*Id.* ¶ 119.

[99]

*Id.* ¶ 57.  Plaintiff, moreover, discusses "the implosion and massive securities fraud prevalent among Chinese-reverse merger companies" like China Valves.  *Id.* ¶ 23.

[100]

*See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 283 (S.D.N.Y. 2001) ("[A]lthough plaintiffs have characterized their claims as being for negligence, in substance they charge fraud.  Accordingly, their negligent misrepresentation claims are deficient for failure to comply with Rule 9(b).").

[101]

Bristol made three separate purchases of China Valves' shares.  It purchased 100,000 shares on January 5, 2011 at $10 per share, 6,300 shares on January 12, 2011 at $8.72 per share, and 22,300 shares on January 13, 2011 at $8.26 per share.  Mitnick Decl. [DI 63], Ex. N.

China Valves argues that Bristol's purchases on January 12-13, 2011 are not actionable under Section 11 because it fails to trace those purchases to the relevant Registration Statement.  DI 62, at 31-34 (citing *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 206 (S.D.N.Y. 2003)).  Bristol does not dispute this argument with regard to the January 12-13, 2011 purchases.  DI 69, at 36 n.27.  While Bristol has standing to bring its Section 11 claims pursuant to its purchase on January 5, 2011, it fails to allege that its subsequent purchases are traceable to the relevant offering materials, especially considering there were almost 35 million China Valves' shares outstanding in the quarter ending September 30, 2010.  Mitnick Decl. [DI 63], Ex. C, at 3.  Moreover, as Section 12(a)(2) does not reach secondary market purchases, Bristol lacks standing to bring a Section

Bristol's Section 11 and 12(a)(2) claims suffer from the same defects as the Exchange Act claims – that the CC fails to allege a material misstatement or omission with particularity.  Thus, for the reasons outlined in Part II of the Discussion, the Section 11 and 12(a)(2) claims are dismissed.

D.      *Section 15 Claim*

In addition to the Section 11 and Section 12(a)(2) claims, Bristol asserts a Section 15 claim for control person liability against the Individual Defendants.  However, as the CC fails to allege a primary violation of the Securities Act, no control person liability can exist under Section 15.[102]  This claim therefore is dismissed.

*Conclusion*

For the foregoing reasons, defendants' motions to dismiss the consolidated complaint [DI 58, DI 61, DI 64] are granted.  This dismissal is without prejudice to the filing, on or before September 26, 2012, of an amended consolidated complaint.

SO ORDERED.

Dated:          September 12, 2012

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

12(a)(2) claim pursuant to the January 12-13, 2011 purchases either.  *See, e.g.*, *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d at 359;  *In re Cosi, Inc. Sec. Litig.*, 379 F. Supp. 2d 580, 589 (S.D.N.Y. 2005).

[102]

*See, e.g.*, *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d at 358; *In re CIT Grp., Inc.*, 349 F. Supp. 2d 685, 691-92 (S.D.N.Y. 2004).